## In re SHORT.
### Patent Appeal No. 3098.

Court of Customs and Patent Appeals.
April 17, 1933.

A. W. Davidson, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel) for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed his application in the United States Patent Office for a patent upon improvements in piston rings and method of making the same. A number of claims were allowed, but claims 10, 15, 17, 20, 23, 24, 25, 26, 27, 29, 33, 34, 35, and 36 were rejected by both tribunals below, and the applicant has appealed. In this court the appellant has moved to dismiss his appeal as to said claim 27.

Claims 10, 24, and 33 are thought to be typical, and follow:

"10. The process of making piston rings which consists in providing an embryo ring which roughly approximates the shape of the finished article, placing the ring in a suitable die, and applying pressure to the ring in an axial direction thereby reducing the axial dimensions of the ring and causing the metal to flow laterally to assume substantially the shape and dimensions of the finished article."

"24. A piston ring of hardened high carbon steel."

"33. The method of making a piston ring of a given shape in cross section which consists of producing a ring of such shape in cross section that the working of the metal necessary to reduce it to the desired shape in cross section will give it the necessary hardness, toughness and resiliency; and applying pressure to the ring to appreciably change its shape in cross section throughout the length thereof."

The references relied upon were: Dulk, 1,121,336, December 15, 1914; White, 1,107,-005, August 11, 1914; Gill, 1,186,980, June 13, 1916; Wright, 1,018,149, February 20, 1912.

Appellant discloses a method of making steel piston rings, substantially as follows: Pieces of stock, square in cross section, but with beveled corners, are bent into shape and cut into ringlike portions, the length of the stock in each ring being somewhat shorter than the circumferential length of the completed ring. This stock ring is then placed in a die and pressed until it assumes its proper form. In this pressing process the metal flows to fill the beveled corners, and also flows longitudinally, thus lengthening the ring. This pressing, it is claimed, together with the rolling and bending of the stock, produces desirable changes in the structure of the ring, by which it becomes more resilient, makes a closer union with the wall of the cylinder, and has other desirable features.

In our opinion, the references cited show the processes employed to be old and known to the art. Dulk shows a method of cutting oversize rings, then reducing them to the proper size by pressure applied to the opposite sides of the rings, which he teaches may be done by a "power press having parallel die faces," and otherwise. White used flat spring wire, which he bends into rings, and, by pressure exerted by a forming disk, changes the cross section of the wire, shapes a ring, and causes the metal of the stock to flow into proper form; thus producing an identical result with the one produced by appellant here.

We may now direct our attention to the article claims, illustrated by claim 24. The substance of appellant's claims of this group is that he has constructed his piston rings of high carbon steel. In support of the patentability of these claims, he argues that the

prior art does not show the use of high carbon steel for such purposes, that high carbon steel has much different characteristics and qualities than other steels, and that, by the use of such high carbon steel, he has secured new and useful results, amounting to invention.

In response to this, the Patent Office calls attention to the fact that the patents to Wright and Gill call for the use of steel, generally, in making piston rings, and that appellant has not indicated, by his designation "high carbon steel," any clear patentable distinction between his disclosure and that of Wright and Gill.

We find ourselves in agreement with this conclusion. Wright uses a band or strip of steel in making his rings. Gill uses sections of steel tubing. The disclosures of both are sufficiently broad to teach the use of any quality or kind of steel.

To constitute an inventive advance over these patents, the inventor must disclose that some particular variety of steel will produce results not theretofore known to, or understood by, the art. Such a disclosure may constitute invention. In re Pilling, 44 F.(2d) 878, 18 C. C. P. A. 703; In re Gray et al., 53 F.(2d) 520, 19 C. C. P. A. 745; In re Richter, 53 F.(2d) 525, 19 C. C. P. A. 756; In re Wells, 56 F.(2d) 674, 19 C. C. P. A. 1044.

However, if such particularity is lacking, a patent will not issue. In re Marshall, 54 F.(2d) 421, 19 C. C. P. A. 832.

It is urged quite earnestly that "high carbon steel" is a variety of steel well known to the art. No authorities are referred to supporting this proposition. The Board of Appeals states: "As a matter of fact, there is no clear physical distinction between high carbon steel and medium carbon steel, each merging into the other." By reference to standard authorities, we find high carbon steel variously defined as being steel containing 0.6 per centum and over of carbon, 0.6 to 1.4 per centum of carbon, 0.85 per centum and over of carbon, and 0.65 to 0.85 per centum of carbon. Steel and its Heat Treatment, Bullens, p. 211; The Manufacture and Properties of Iron and Steel, Campbell, p. 95; The Making, Shaping and Treating of Steel, Carnegie, p. 259; Encyc. Brit. (14th Ed.) vol. 12, p. 666.

It thus appears that this group of appellant's claims are indefinite, and have added nothing to the knowledge already possessed by the art. For this reason they were properly disallowed.

Finally, it is argued that certain claims were subsequently allowed to Marshall, No. 1,758,575, which are the equivalents of certain of appellant's rejected claims here, and that, therefore, the appellant's said claims should be allowed. As we said in Re Fischer, 47 F.(2d) 794, 18 C. C. P. A. 1076, and cases therein cited, the fact that the Patent Office may have committed an error and issued an invalid patent cannot be taken as a reason for the subsequent issuing of another having the same defects. However, in the Marshall patent the allowed claims definitely state therein the quantity of carbon present. This constitutes an essential difference from appellant's indefinite term "high carbon," and may create a patentable distinction.

For the reasons given, the appeal as to claim 27 is dismissed, and as to the remaining claims the decision of the Board of Appeals is affirmed.

Affirmed.